[Civ. No. 2894. Fourth Dist., June 25, 1943.]

THE PEOPLE, Appellant, v. ONE 1941 CADILLAC 4-DOOR TOURING SEDAN, Defendant; C. S. McKINNEY, Respondent.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Appellant.

Edward L. Davin for Respondent.

BARNARD, P. J.—This is a proceeding under the provisions of division 10, chapter 7 of the Health and Safety Code to establish that an automobile had been used to transport narcotics and to declare it forfeited to the state. The owner and driver of the car, one McKinney, was arrested in San Diego about 3 o'clock a. m. on June 8, 1942, on a charge

of driving while under the influence of liquor. He was booked at the city jail at 3:20 a. m. when he was searched. Shortly thereafter, two brown cigarettes which contained marihuana were found on a shelf with articles which had been taken from McKinney's pockets. In this proceeding, which followed, the court found in favor of the defendant and entered a judgment ordering the car released to McKinney. The People have appealed from the judgment upon the sole ground that there is no evidence whatsoever to support the findings and judgment, and that all of the evidence is clearly and directly contrary thereto.

It appears that in the booking office of this jail there was a counter on which were a number of things used for clerical purposes. About six inches above the counter was a shelf. There was grill work around the counter and the shelf with a small window therein, through which the shelf could be reached.

Sergeant Lynch testified that he was present when McKinney was brought in; that officers Weathers and Krause were also there; that he did not watch officer Weathers search McKinney; that he paid no attention to this search until his attention was called by officer Krause to two home-made cigarettes "laying on that shelf"; that there had been nothing on this shelf when McKinney was brought in; that Krause remarked that he believed these cigarettes were marihuana and that it would be wise to notify the proper officers; that this conversation was in the presence of McKinney and officers Krause and Weathers; that he did not discuss these cigarettes with McKinney; that the cigarettes were discovered when McKinney's left-hand coat pocket had been emptied; and that officer Weathers then proceeded to search the right-hand pocket. He also testified that on that day he went to work at 3 o'clock in the afternoon and left the jail at 11 o'clock that night, and that McKinney was brought in and searched between those hours.

Officer Weathers testified that he searched McKinney on this occasion. To a question by the court as to whether he took these cigarettes from the man's pocket he replied: "Well, sir, I don't know. I searched the man. There was nothing on the counter at the time, on the ledge I placed his belongings on, and the cigarettes appeared there. However, I did not see them as I took them out of his pockets. I couldn't swear that I took them directly from his pockets." He further testified

that there was no conversation with reference to these cigarettes in the presence of McKinney; that he had previously seen marihuana cigarettes which were similar to these; that he first saw these cigarettes or had his attention called to them after all entries had been made in the booking slip and after he took McKinney away and locked him up; that when he returned after doing this he found the sergeant and officer Krause examining the cigarettes and talking about them; that this was the first he knew of them; and that "I can't say that I actually took them from his person."

Officer Krause testified that he was the booking officer; that McKinney was booked at 3:20 a.m.; that he was writing his property receipt; that there was nothing on the shelf; that Weathers was searching McKinney and placing the property through the window; that while "checking the property" he found the cigarettes, which "were loose"; that he checked the property immediately after it was placed on the shelf; and that he called the cigarettes to the attention of Sergeant Lynch "who was standing at my right working the typewriter." On cross-examination he testified that he made a list of what was taken from McKinney and gave him a copy; that he did not put any cigarettes on the list; that "cigarettes, we never index; just things of value"; and that he did not see these cigarettes taken from McKinney's person.

▮ The evidence justifies the inference that the two cigarettes in question were not discovered by Krause until after the booking of McKinney had been completed and he had been taken away. While Sergeant Lynch testified that they were discovered while the search was in progress, he also testified that he did not watch the search and was paying no attention to it. He was operating a typewriter at the time, and he was even mistaken as to the time of day when the search was made. The trial judge was not compelled to take all of his testimony at face value. While Krause testified that he discovered the cigarettes while he was "checking the property" this must have been after McKinney was taken away as Krause said he immediately called the matter to the attention of Sergeant Lynch, and officer Weathers testified that nothing was said about the cigarettes until after he had taken McKinney away and that when he returned he found the other two officers talking about them. It is hardly reasonable to suppose that so important an item would have been omitted

from the list being made if it had been discovered before the list was completed and a copy given to McKinney. Regardless of the custom with respect to listing ordinary cigarettes, it seems unlikely that officers would intentionally fail to list narcotics found in the possession of a prisoner.

The appellant argues that all of the material facts are established by direct, positive and uncontradicted evidence and that there is no room left for any inference. However, there is nothing to support its present contention except inferences. The burden was upon the appellant to prove that these cigarettes had been in the possession of McKinney and that they had been in his possession while he was driving the car in question. There is no direct evidence of either of these facts. Under appellant's theory there is necessarily involved not only one inference but another based upon the first. It is argued that, since the officers testified that there was nothing on this shelf prior to the search, these cigarettes must have come from McKinney's pockets. One of the officers was obviously mistaken in two important matters, and it is not impossible that they were all mistaken in this one. They were busy with and interested in other things and they might easily have failed to observe two such small articles if they were on the shelf. That they should do this is no more improbable than that the searching officer should fail to see that kind of cigarettes, with which he was familiar, if he actually handled them and removed them from a person's pocket at a time when he presumably would be rather definitely interested in what he was doing..

Not only was there a presumption of innocence favoring McKinney, which could be considered by the trial court, but we think the court was not compelled to draw the particular inferences on which the appellant now relies. It cannot be said, as a matter of law, that the court could not reasonably have drawn the inference that these cigarettes could not have been taken from a prisoner and handled by an experienced officer without being seen, and that they had come from some other source. It was not incumbent upon the defense to establish where the cigarettes came from but the burden rested upon the appellant to satisfactorily prove that they had been in the possession of McKinney. The question was entirely one of fact for the trial court and its finding

and conclusion cannot be disturbed when more than one inference from the facts is reasonably possible. (*Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1 [47 P.2d 462].)

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.